**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**MARK ELSAID,** CASE NO.: 2:26-cv-__________

Plaintiff,

v.

**CARMINE MARCENO, in his official capacity as SHERIFF of LEE COUNTY, FLORIDA**

Defendant.
_________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff MARK ELSAID hereby sues Defendant CARMINE MARCENO, in his official capacity as SHERIFF of LEE COUNTY, FLORIDA, and alleges:

## NATURE OF THE ACTION

1. This is a civil action for damages and equitable relief under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First Amendment to the United States Constitution. Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), because they arise under the Constitution and laws of the United States.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), because Defendant resides in this District and the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which lies within the Fort Myers Division.

**PARTIES**

4. At all times pertinent hereto, Plaintiff, MARK ELSAID, has been a resident of LEE COUNTY, FL. He is *sui juris*.

5. At all times pertinent hereto, Defendant, CARMINE MARCENO, in his official capacity as SHERIFF of LEE COUNTY, Florida (hereinafter "SHERIFF"), has been organized and existing under the laws of Florida as a law enforcement agency known as the LEE COUNTY SHERIFF'S OFFICE ("LCSO") and is located in LEE COUNTY, Florida.

**CONDITIONS PRECEDENT**

6. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

**FACTUAL ALLEGATIONS**

7. Plaintiff was hired by the Lee County Sheriff's Office ("LCSO") as a Deputy Sheriff on or around May 1, 2014. He was appointed a K-9 handler within the Special Enforcement Team/Community Response Unit Selective Enforcement

Team ("CRUSET") on November 21, 2019, under Captain Andy Prisco, and held this position until the time of his forced resignation on November 22, 2024.

8. On February 25, 2022, Plaintiff initiated a traffic stop that uncovered a human-trafficking operation involving two victims, including a pregnant minor. When Sergeant James Divis relayed a directive from LCSO administration to gather the victims' and suspects' information and let them go, Plaintiff refused, stating that he could not let that happen. Plaintiff believed the incident met the elements of Florida's human-smuggling statute and believed that releasing the victims and suspects would endanger the victims. After LCSO did not authorize Plaintiff to continue the investigation or make arrests, Plaintiff contacted the Florida Highway Patrol, which referred him to Homeland Security Investigations (HSI). Plaintiff explained the circumstances to HSI, including that LCSO was not making the arrests, and HSI assumed responsibility for the investigation and arrested the suspects. Plaintiff's communication with HSI was outside the scope of his ordinary duties as a Deputy Sheriff and was made to report what Plaintiff believed to be improper conduct by LCSO personnel. Plaintiff was placed on administrative leave with pay that same day, without being given a reason until March 27, 2022.

9. On March 27, 2022, Captain Bryan Perera informed Plaintiff that his administrative leave had ended and arranged for the return of his patrol vehicle. During the conversation, Perera advised Plaintiff to refrain from taking proactive

actions because they were not supported by the administration. When Plaintiff asked who opposed proactive activity, Perera identified “the sheriff and CAR 2,” which he explained meant Carmine Marceno and John Holloway, respectively, and stated that they “don’t want that look right now or these events documented.” Perera told Plaintiff to consider the statement a warning.

10. On December 8, 2023, Sharon Reuter and Bryan Lyon, who were private civilians, accused Plaintiff of stalking Reuter by means of a tracking device. The first responding deputy, Jaznzano Fabio, observed the device on a sidewalk rather than attached to Reuter's vehicle as alleged, but Captain John Craven directed Fabio to "forget everything" and leave the scene.

11. The next day, December 9, 2023, Commander of Special Operations Michael Tamuliounis and Commander of the Criminal Investigations Bureau Karl Albenga brought Plaintiff to LCSO headquarters, where Undersheriff John Holloway told Plaintiff, “If you resign, all this can go away. If not, I will give a copy of the allegations to Wink News. It's up to you." Plaintiff refused to resign under these circumstances. Plaintiff understood Holloway's statements and Sands' statements as pressure to resign in connection with the adverse treatment he was then experiencing. Major Matthew Sands separately told Plaintiff to accept Holloway's offer, or he would be "buried" and "embarrassed." Plaintiff was thereafter placed on administrative leave (IA2023-041) during a criminal stalking investigation (case no.

23-545639) led by Detective Ryan Poklemba, whom Plaintiff understood to be a personal friend of Sergeant Nathan Hankins.

12. A temporary stalking injunction against Plaintiff was entered on December 19, 2023, notwithstanding Plaintiff's retained counsel's assessment that Reuter's petition alleged only a single incident and did not satisfy Florida's statutory repeated-conduct requirement for stalking. Restaurant surveillance video showed Reuter's associate, Steven Dugey, reaching into the area of Reuter's vehicle where the tracking device was later claimed to have been discovered. Detective Christopher Tice told Plaintiff that this video was "the only thing clearing your name," and that Undersheriff Holloway was "overly interested in nailing" Plaintiff. Plaintiff was advised he could not pursue false-reporting charges against Reuter because Holloway did not want that and wanted the matter closed. The injunction was later withdrawn and the underlying record restricted from public access.

13. On December 22, 2023, before the stalking investigation had concluded, Deputy Dash Lockhart and Hunter Kerns collected Plaintiff's K-9 equipment and informed him he was no longer part of the K-9 Unit. When Plaintiff asked why, Lockhart responded, "they made their decision," indicating the decision had been made before the investigation was complete. Lockhart also told Plaintiff, "you know how they are," but did not identify who "they" referred to; however, Plaintiff reasonably understood it to mean upper command or administration.

14. On January 9, 2024, Commander Robert Casale informed Plaintiff he would be transferred to East District patrol, told him not to concern himself with his former K-9 position, and used an analogy of a "bucket filling up" with Plaintiff's name in it. Plaintiff understood the "bucket" analogy to mean that command was accumulating complaints or negative incidents involving Plaintiff to justify continued adverse action against him. Casale did not identify a particular act or policy violation that was causing the "bucket" to fill.

15. On June 13, 2024, Plaintiff was cleared of the stalking allegation, but Internal Affairs (IA2023-041) issued additional findings against him for an alleged technical-support-policy violation that Plaintiff maintains was unsubstantiated. Plaintiff submitted a written rebuttal through his chain of command addressed to the Sheriff. In his rebuttal, Plaintiff challenged the allegations against him and asserted violations of the Law Enforcement Officers' Bill of Rights.

16. On July 25, 2024, Human Resources Assistant Director Cari Turner and Internal Affairs Secretary Sheila Seybold each advised Plaintiff that the rebuttal had never been received. Plaintiff thereafter resubmitted the rebuttal through his chain of command to the Sheriff, and Undersheriff Holloway ultimately signed the memorandum after Plaintiff requested a signature.

17. On August 2, 2024, during the same week that an unrelated deputy was arrested for separate misconduct, information concerning Plaintiff's criminal

investigation was released publicly. Wink News told Plaintiff that Undersheriff Holloway had personally contacted the station to air the story, consistent with Holloway's earlier threat to do so.

18. On or around September 10, 2024, Plaintiff observed a marked LCSO patrol vehicle driven by Lieutenant Jason Tarisa pass his residence twice. This surveillance and its reason were never disclosed in any subsequent report.

19. At approximately 4:30 a.m. on September 18, 2024, before Plaintiff's shift began and before any allegation had been disclosed to him, Sergeant Andrew Clark and Detective Christina Minto escorted Plaintiff to an interrogation room and demanded that he surrender his personal cell phone without a warrant, a stated allegation, or a recording. Plaintiff declined and asked that they first provide a warrant or allegation. Clark responded that they would have "no issue" obtaining a warrant. Only after 5:00 a.m. was Plaintiff informed of an allegation of sexual assault from a woman with whom he had never had sexual relations (call for service 24-476949), at which point he declined to answer further questions without counsel.

20. That same morning, Major Robert Casale searched Plaintiff's patrol vehicle, personal bag, and person, and LCSO executed a residence search warrant that was amended twice, expanding in scope from digital photographs and a cell phone to a home security camera, and ultimately to training smoke canisters for which Plaintiff had a receipt showing lawful acquisition from a third-party vendor.

Plaintiff further reports that, when LCSO later took custody of his cell phone and downloaded its contents, the photographs he had sent to Hollow could be observed in the downloaded content.

21. During the late hours of September 19, 2024, Plaintiff observed a white GMC van, which he recognized to be a mode of transportation for trap-and-trace devices, positioned near his residence while he received blocked calls to his replacement phone, which is consistent with the use of the device. Plaintiff was never provided a copy of any court order authorizing a pen register, trap-and-trace device, or cell-site simulator in connection with this surveillance, either at the time or after the investigation closed.

22. On September 20, 2024, during a traffic stop being conducted on Plaintiff, Detective Marcin Kaziuk seized the replacement phone Plaintiff had purchased only two days earlier, purportedly pursuant to search warrant no. 75582 (issued September 17, 2024). The body-worn cameras of every officer present were deactivated during the stop, which Plaintiff was told was "not usual practice."

23. On October 22, 2024, the State Attorney's Office declined to file any criminal charges against Plaintiff related to the sexual assault allegations.

24. On November 22, 2024, Undersheriff Holloway, Commander Casale, and Chief Christopher Reaves orally agreed, in a meeting attended by Plaintiff's then-counsel Michael Krohn, that all pending internal-affairs allegations against

Plaintiff would be deemed unfounded and would not be reflected adversely on his separation paperwork if Plaintiff agreed to separate from LCSO. Before agreeing to separate, Plaintiff told Krohn that he believed the years of adverse treatment were connected to his refusal to stop being proactive in his law-enforcement work, his association with Hollow, described below, and protected activity. Ultimately, Plaintiff involuntarily separated from LCSO in reliance on the aforementioned agreement.

25. Notwithstanding that agreement, Plaintiff's personnel record reflects that he separated from LCSO while under investigation with internal charges. When attorney Krohn raised this discrepancy, Commander Travis Hicks advised that Undersheriff Holloway "speaks for the sheriff" and that LCSO would not correct the record. As of August 15, 2026, the ATMS record remained uncorrected.

26. Prior to the actions taken against Plaintiff described above in 2023 and 2024, Plaintiff has been a personal friend of, and was known within LCSO to be associated with, Michael Hollow, a candidate who ran against Defendant Marceno for Sheriff of Lee County in 2024. Plaintiff voiced his opinions about alleged corruption within LCSO to Hollow. Plaintiff and Hollow became friends while serving together in the K-9 Unit within Defendant, where Hollow acted as Plaintiff’s mentor. Hollow also publicly spoke in Plaintiff’s defense after Plaintiff was accused of chasing a vehicle and the LCSO Public Information Office used the video in a

publicity video posted to LCSO's Facebook page. Hollow left the K-9 Unit in February 2023 and left LCSO shortly afterward, but Plaintiff remained his friend and supporter. Their relationship was visible in 2024 leading up to the election because they were seen together in public, and Plaintiff liked Hollow's social-media posts, including posts about Hollow's campaign, and posted social-media stories about Hollow's candidacy, K-9 content, and Blue Line Reality content. Plaintiff also attended events and outings with Hollow. Without question, LCSO administrators including the Defendant and Holloway observed his interactions with Hollow's social-media content and knew of Plaintiff's political activities supportive of Hollow.

27. Plaintiff discussed alleged corruption and events he had personally witnessed within LCSO with Hollow during off-duty, personal conversations and endorsed Hollow's candidacy for Sheriff. In September 2024, Plaintiff also sent Hollow photographs depicting holes that Undersheriff John Holloway had made in the Second Precinct public conference room walls, which Hollow subsequently posted online. Plaintiff's association with Hollow and his communications with Hollow constituted Plaintiff's exercise of his rights to freedom of speech and political association concerning matters of public concern, including Plaintiff's personal views regarding alleged corruption within LCSO.

28. After Defendant Marceno defeated Hollow in the 2024 election, Plaintiff was forced out of LCSO on November 22, 2024, as described above.

29. Throughout the period described above, Plaintiff's protected political association with Sheriff candidate Michael Hollow and Plaintiff's reports and objections described above were known to Defendant Marceno, Undersheriff Holloway, and/or other LCSO final policymakers, and each adverse action described above followed closely after Plaintiff's protected activity or protected association.

30. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**FIRST AMENDMENT RETALIATION: SPEECH**
(42 U.S.C. §1983)

31. Plaintiff realleges and incorporates paragraphs 1 through 30 as if fully set forth in this Count.

32. This Count is brought under 42 U.S.C. § 1983 against Defendant for retaliating against Plaintiff because of his speech, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

33. Plaintiff engaged in speech protected by the First Amendment. Speaking as a citizen, and not pursuant to his official duties, Plaintiff addressed

matters of public concern, including: (a) his February 25, 2022 report to Homeland Security Investigations that LCSO had declined to arrest the suspects in a human-trafficking matter involving two victims, one of them a pregnant minor, and had directed that the suspects and victims be released; (b) his off-duty, private communications with Michael Hollow describing corruption and misconduct Plaintiff had personally witnessed within LCSO; and (c) the photographs Plaintiff sent to Hollow in September 2024 showing holes Undersheriff Holloway had made in the walls of the Second Precinct public conference room, which Hollow then published online.

34. None of this speech was part of Plaintiff's ordinary job duties as a Deputy Sheriff. No LCSO policy, directive, or assignment required or authorized Plaintiff to report LCSO's handling of the human-trafficking matter to Homeland Security Investigations. To the contrary, LCSO had directed him to let the suspects and victims go and had refused to authorize him to continue the investigation. Plaintiff went to an outside federal agency on his own initiative, outside his chain of command, to report what he believed was improper conduct by LCSO personnel. Plaintiff's communications with Hollow likewise took place off duty, in personal conversations and private messages, and not through any official channel. Discussing corruption within LCSO with a private citizen seeking public office is not a task Plaintiff was employed to perform.

35. Plaintiff's speech went to the heart of matters of public concern: the safety of human-trafficking victims, the integrity of the Sheriff's law-enforcement decisions, and misconduct by the agency's highest-ranking officers during a contested election for Sheriff. Plaintiff's interest, and the public's interest, in that speech outweighed any interest Defendant had in promoting the efficiency of the public services LCSO performs. Plaintiff's speech did not impair LCSO's operations or his ability to perform his duties.

36. Defendant Marceno, Undersheriff Holloway, and other LCSO final policymakers knew of Plaintiff's speech. Plaintiff was placed on administrative leave the same day he contacted Homeland Security Investigations, and when he returned, Captain Perera warned him that the Sheriff and Undersheriff Holloway did not want such events documented. Hollow published the photographs Plaintiff sent him, and LCSO's later download of Plaintiff's cell phone captured those same photographs.

37. Defendant's retaliation was a continuing course of conduct, not an isolated act. It began the day Plaintiff contacted Homeland Security Investigations, when he was placed on administrative leave without explanation; continued with Captain Perera's warning that the Sheriff and Undersheriff Holloway did not want proactive enforcement or such events documented; escalated through the investigations, removal, transfer, threats, and media exposure described above; and intensified again in September 2024, the same month Plaintiff sent Hollow the

photographs that Hollow published, when LCSO drove by Plaintiff's residence, demanded his personal phone, searched his vehicle, home, and person, and seized his replacement phone.

38. Because of Plaintiff's speech, Defendant, acting through Defendant Marceno personally and through Undersheriff Holloway as his delegated final policymaker, took adverse actions against Plaintiff that would likely deter a reasonable employee, or a person of ordinary firmness, from exercising First Amendment rights, including placing him on administrative leave; removing him from the K-9 Unit; transferring him to East District patrol; subjecting him to repeated internal and criminal investigations, searches, surveillance, and heightened scrutiny; publicizing the investigation against him to the news media; pressuring him to resign under threat of public embarrassment; and refusing to correct his separation record after he left the agency.

39. The retaliation included Undersheriff Holloway's statement to Plaintiff on December 9, 2023, "If you resign, all this can go away," together with his threat to give the allegations against Plaintiff to Wink News if Plaintiff did not resign, and Major Sands' warning that Plaintiff would be "buried" and "embarrassed" if he refused Holloway's offer. Holloway carried out that threat in August 2024, when he personally contacted Wink News to air the story.

40. Defendant Marceno is LCSO's final policymaker with respect to the employment decisions alleged in this Complaint, and he delegated that authority to Undersheriff Holloway, who, as Commander Hicks told Plaintiff's counsel, "speaks for the sheriff." Upon information and belief, none of the adverse actions alleged in this Count, including the removal from the K-9 Unit, the transfer, the investigations, searches, and surveillance, the pressure to resign, and the refusal to correct Plaintiff's separation record, was subject to review by any civil service board or other body with authority to reverse it. Defendant Marceno also ratified this conduct: he knew of Plaintiff's protected activity and Holloway's campaign against him, and through Holloway and Commander Hicks he refused to correct Plaintiff's separation record and allowed the retaliation to stand.

41. To the extent any adverse action alleged in this Count was carried out or formally decided by an LCSO official other than Defendant Marceno or Undersheriff Holloway, Holloway's retaliatory animus caused it. Holloway set the investigations and personnel actions against Plaintiff in motion and steered them, and those working the cases saw it: Detective Tice told Plaintiff that Holloway was "overly interested in nailing" him, and Plaintiff was told he could not pursue false-reporting charges against his accuser because Holloway wanted the matter closed. The officials who acted against Plaintiff did so at Holloway's direction or under his influence, and Holloway's animus is attributable to Defendant.

42. The cumulative effect of this conduct made Plaintiff's working conditions so intolerable that a reasonable person in his position would have felt compelled to resign. Plaintiff did not leave by choice. He agreed to separate only after years of retaliation, while facing pending allegations Defendant had used to pressure him, and only on Defendant's promise that every pending allegation would be deemed unfounded and kept off his separation paperwork, a promise Defendant then broke. On November 22, 2024, Plaintiff was forced to separate from LCSO.

43. Plaintiff's protected speech was a substantial or motivating factor in each of these adverse actions, and Defendant would not have taken them in the absence of that speech.

44. Defendant acted to punish Plaintiff for speaking out and to deter Plaintiff and other LCSO employees from reporting misconduct within the agency to outside authorities or to the public.

45. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered, and will continue to suffer, damages including lost wages and other employment benefits, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, damage to his reputation, and other tangible and intangible losses.

## COUNT II
## FIRST AMENDMENT RETALIATION: POLITICAL ASSOCIATION
(42 U.S.C. §1983)

46. Plaintiff realleges and incorporates paragraphs 1 through 30 as if fully set forth in this Count.

47. This Count is brought under 42 U.S.C. § 1983 against Defendant for retaliating against Plaintiff because of his political association, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment.

48. The First Amendment protects a public employee's right to associate with, and to support, a candidate for public office, including a candidate who seeks to unseat the employee's own superior.

49. Plaintiff exercised that right by associating with and supporting Michael Hollow, who ran against Defendant Marceno for Sheriff of Lee County in 2024. Plaintiff and Hollow were longtime friends who had served together in the K-9 Unit, where Hollow was Plaintiff's mentor. In 2024, Plaintiff openly supported Hollow's candidacy: he endorsed Hollow, appeared with him in public, attended events and outings with him, liked Hollow's campaign posts on social media, and posted his own social-media stories about Hollow's candidacy.

50. Plaintiff's support for Hollow was off-duty political activity unrelated to his work as a K-9 deputy. Plaintiff did not hold a policymaking, supervisory, or confidential position, did not speak for the Sheriff, and was not responsible for

carrying out the Sheriff's policy agenda. Political loyalty to Defendant Marceno was not an appropriate requirement for the effective performance of Plaintiff's job.

51. Defendant Marceno, Undersheriff Holloway, and other LCSO final policymakers knew of Plaintiff's association with Hollow. The friendship was well known within LCSO, Plaintiff's support for Hollow's campaign was public, and LCSO administrators, including Defendant Marceno and Undersheriff Holloway, observed Plaintiff's engagement with Hollow's social-media content.

52. Plaintiff's association with Hollow predated the adverse actions described above and was known within LCSO before they began. The retaliation intensified during the 2024 campaign, when Undersheriff Holloway released the investigation to Wink News and LCSO searched and surveilled Plaintiff, and it continued after Defendant Marceno defeated Hollow, ending in Plaintiff's forced separation on November 22, 2024.

53. Because of Plaintiff's association with Hollow, Defendant, acting through Defendant Marceno personally and through Undersheriff Holloway as his delegated final policymaker, took adverse actions against Plaintiff that would likely deter a reasonable employee, or a person of ordinary firmness, from exercising First Amendment rights, including placing him on administrative leave; removing him from the K-9 Unit; transferring him to East District patrol; subjecting him to repeated internal and criminal investigations, searches, surveillance, and heightened scrutiny;

publicizing the investigation against him to the news media; pressuring him to resign under threat of public embarrassment; and refusing to correct his separation record after he left the agency.

54. The retaliation included Undersheriff Holloway's statement to Plaintiff on December 9, 2023, "If you resign, all this can go away," together with his threat to give the allegations against Plaintiff to Wink News if Plaintiff did not resign, and Major Sands' warning that Plaintiff would be "buried" and "embarrassed" if he refused Holloway's offer. Holloway carried out that threat in August 2024, when he personally contacted Wink News to air the story.

55. Defendant Marceno is LCSO's final policymaker with respect to the employment decisions alleged in this Complaint, and he delegated that authority to Undersheriff Holloway, who, as Commander Hicks told Plaintiff's counsel, "speaks for the sheriff." Upon information and belief, none of the adverse actions alleged in this Count, including the removal from the K-9 Unit, the transfer, the investigations, searches, and surveillance, the pressure to resign, and the refusal to correct Plaintiff's separation record, was subject to review by any civil service board or other body with authority to reverse it. Defendant Marceno also ratified this conduct: he knew of Plaintiff's protected activity and Holloway's campaign against him, and through Holloway and Commander Hicks he refused to correct Plaintiff's separation record and allowed the retaliation to stand.

56. To the extent any adverse action alleged in this Count was carried out or formally decided by an LCSO official other than Defendant Marceno or Undersheriff Holloway, Holloway's retaliatory animus caused it. Holloway set the investigations and personnel actions against Plaintiff in motion and steered them, and those working the cases saw it: Detective Tice told Plaintiff that Holloway was "overly interested in nailing" him, and Plaintiff was told he could not pursue false-reporting charges against his accuser because Holloway wanted the matter closed. The officials who acted against Plaintiff did so at Holloway's direction or under his influence, and Holloway's animus is attributable to Defendant.

57. The cumulative effect of this conduct made Plaintiff's working conditions so intolerable that a reasonable person in his position would have felt compelled to resign. Plaintiff did not leave by choice. He agreed to separate only after years of retaliation, while facing pending allegations Defendant had used to pressure him, and only on Defendant's promise that every pending allegation would be deemed unfounded and kept off his separation paperwork, a promise Defendant then broke. On November 22, 2024, Plaintiff was forced to separate from LCSO.

58. Plaintiff's political association with Hollow was a substantial or motivating factor in each of these adverse actions, and Defendant would not have taken them in the absence of that association.

59. Defendant acted to punish Plaintiff for supporting Defendant Marceno's political opponent and to deter other LCSO employees from supporting candidates who challenge the incumbent Sheriff.

60. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered, and will continue to suffer, damages including lost wages and other employment benefits, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, damage to his reputation, and other tangible and intangible losses.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff, including correction of Plaintiff's personnel and ATMS records to reflect that he separated from LCSO in good standing;

(c) enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of the federal laws enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f) grant such other and further relief as is just and proper under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Dated this 23rd day of October, 2026.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF